**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,              )<br>                                                            )<br>                    Plaintiff,                         )<br>                                                            )<br>vs.                                                       )<br>                                                            )<br>JESUS MENDEZ-CEJAS,                      )<br>                                                            )<br>                    Defendant.                     )<br>_____) | Case No.: 2:08-cr-00024-JCM-GWF<br><br>**FINDINGS & RECOMMENDATIONS**<br><br>**Motion to Suppress Evidence - #17, #48** |

This matter is before the Court on Defendant's Motion to Suppress Evidence (#17), filed on May 9, 2008 and the Government's Response in Opposition to Defendant's Motion to Suppress Evidence (#19), filed on May 23, 2008. Defendant previously withdrew his motion to suppress with leave to resubmit it in the event plea negotiations were unsuccessful. *See Stipulation and Order (#44, #45).* Defendant filed his Motion to Resubmit Motion to Suppress and Request for Evidentiary Hearing (#48) on November 28, 2008. The Court thereafter conducted an evidentiary hearing on January 13, 2009.

## FACTUAL BACKGROUND

The Indictment (#4) alleges that on or about January 18, 2008, Defendant Jesus Mendez, aka Mendez-Ceja, possessed with intent to distribute five kilograms of cocaine in violation of 21 U.S.C. §841(a)(1) and (b)(1)(A)(ii). These charges arise out of the stop and subsequent search of Defendant's vehicle by the Nevada Highway Patrol which resulted in the discovery of cocaine.

Nevada Highway Patrol Trooper Shawn Martin was the sole witness at the evidentiary hearing. Trooper Martin has been employed by the Nevada Highway Patrol for 16 years and has been a member of the Interdiction Task Force for the past 8 years. As a member of the Task Force he has attended DEA courses and received training in identifying and interdicting drug couriers. Trooper Martin testified that

1  at approximately 10:36 a.m. on January 18, 2008, he was riding as a passenger in a marked Nevada
2  Highway Patrol vehicle operated by Trooper Owens.  The troopers were traveling on southbound
3  Interstate 15 in Clark County, Nevada, northwest of Las Vegas.  Near mile marker 52, they turned into
4  the center median of the freeway to travel onto the northbound freeway.  At that time, Trooper Martin
5  testified that he observed a silver Volkswagen Jetta traveling in the number two or outside northbound
6  travel lane of the freeway.  After the troopers' vehicle entered the northbound travel lane, Trooper Martin
7  observed the Volkswagen Jetta move from the outside to inside travel lane to pass another vehicle.  After
8  entering the inside travel lane, the Volkswagen Jetta was behind a tractor-flat bed trailer.  Trooper Martin
9  testified that he observed that the Volkswagen Jetta, which had California license plates, was traveling
10 approximately one and one-half car lengths behind the tractor-trailer at seventy miles per hour for a
11 period of approximately 10 seconds.  Based on the training he has received, Trooper Martin testified that
12 a driver of a vehicle should maintain a distance of 2 seconds behind the vehicle in front of him.  Trooper
13 Martin therefore concluded that the driver of the Volkswagen Jetta was following the tractor-trailer too
14 closely in violation of Nevada Revised Statute (NRS) 484.307.   The troopers thereupon initiated a
15 traffic stop of the Volkswagen Jetta.

16       The Volkswagen Jetta pulled over to the side of the freeway and the troopers stopped behind it.
17 Trooper Martin exited the patrol vehicle and approached the right passenger side of the Volkswagen
18 Jetta.  The driver, who was subsequently identified as Defendant Mendez, rolled down the passenger
19 window.  Trooper Martin asked Defendant for his driver's license and he provided it to the trooper.
20 Trooper Martin testified that as part of his interdiction training, he was instructed to look for certain
21 suspicious signs or indications that are commonly associated with drug couriers.  In this case, Trooper
22 Martin testified that upon looking into the cab of Defendant's vehicle, he observed that there was one
23 key on the ignition key ring.  Trooper Martin testified that it is common for drug couriers to have only an
24 ignition key for the vehicle and for the vehicle to be registered to a person other than the driver or
25 occupants of the vehicle.  In this case, the Volkswagen Jetta was not registered to Defendant Mendez.
26 Trooper Martin also observed a yellow "Christmas tree" air freshener hanging from the rear view mirror.
27 Trooper Martin testified that air fresheners are used to mask the odor of narcotics in a vehicle, although
28 he could not remember whether the air freshener in Defendant's vehicle emitted an odor.

1    Trooper Martin testified that he asked Defendant Mendez to exit the vehicle and walk back to the
2  front of the patrol vehicle. He explained to Defendant that he stopped him for following the tractor-
3  trailer too closely. According to the trooper, Defendant Mendez apologized. Trooper Martin then
4  handed Defendant's license to Trooper Owens, who was still in the patrol vehicle, to request a dispatch
5  records check on Defendant. Trooper Martin testified that this occurred a couple of minutes after
6  Defendant's vehicle was stopped. While waiting for the records check to return, Trooper Martin
7  engaged in conversation with Defendant Mendez. He asked the Defendant where he was coming from
8  and where he was going to, and the purpose of his trip. Defendant stated that he was coming from
9  Sylmar, California and was going to visit his brother who was sick in a hospital in Utah. Under further
10 questioning, Defendant could not identify the city in Utah or the name of the hospital that he was
11 traveling to. Defendant was also unable to give more specific information about his brother's illness.
12 Defendant stated that the vehicle belonged to his cousin. Trooper Martin testified that he considered
13 Defendant's answers to his questions to be "highly unusual."

14   Trooper Martin then returned to the patrol vehicle and was advised by Trooper Owens that the
15 records check was negative for any wants. He testified that the records check returned at 10:42 a.m.
16 Before returning to the Defendant, Trooper Martin briefly discussed Defendant's responses to his
17 questions with Trooper Owens and filled out a consent to search form. Trooper Martin then handed
18 Defendant Mendez back his driver's license, informed him that he was not issuing him a citation and that
19 he was free to leave. According to Trooper Martin, Defendant thanked him and turned and walked
20 toward his vehicle. Defendant took approximately four steps toward his vehicle, at which point Trooper
21 Martin asked Defendant if he could ask him a few more questions. Defendant Mendez indicated that he
22 was willing to answer additional questions. Trooper Martin asked Defendant if there were any weapons,
23 drugs or large sums of money in the car. Defendant said no. Trooper Martin then asked Defendant if he
24 would allow the trooper to search his car. Defendant Mendez shook his head up and down and stated
25 "sure" as he pointed his hand toward the vehicle. By this point, Nevada Highway Patrol Sergeant Roll
26 had arrived at the scene and parked his vehicle behind Trooper Owens' patrol vehicle. A Las Vegas
27 Metropolitan Police Department K-9 unit vehicle had also arrived on the scene and was parked next to
28 Trooper Owens' vehicle. Sergeant Roll and the K-9 unit officer, however, had not yet exited their

vehicles. Trooper Owens was also still in his vehicle when Trooper Martin obtained Defendant's consent to search the vehicle.

Trooper Martin presented the consent to search form to the Defendant and asked him to read it and make sure he understood it. Defendant appeared to read the form. After Defendant signed the Spanish language portion of the form, the Trooper asked him if he understood it and Defendant indicated that he did. During the stop, the trooper had conversed with Defendant in the English language. Trooper Martin testified that Defendant signed the consent to search form at 10:54 a.m. This was approximately 18 minutes after his vehicle was stopped. Trooper Martin testified that at the time Defendant signed the consent to search form, he was not under arrest, he had not been informed of his Miranda rights and he was not in handcuffs. No guns were pointed at Defendant and no threats were made to him such as that a search warrant would be obtained if he did not consent to the search.

Trooper Martin testified that he then proceeded with the search of the vehicle. During the search, Defendant was standing approximately 25 feet from his vehicle in a position where he could observe the search. Defendant did not make any request that the trooper cease the search. Trooper Martin testified that upon commencing the search he proceeded immediately to the rear bumper area of the Volkswagen Jetta. He testified that the rear bumper area is the most common area on this type of vehicle for concealing contraband. Upon inspecting the underside of the bumper area, Trooper Martin noted that screws that attach the underside faring to the bumper had signs of recent tool marks. Trooper Martin unscrewed the faring and pulled it back. He then observed a metal fabricated box mounted up in the rear bumper. Trooper Martin noted that prior to conducting the "hand search" of the vehicle, the K-9 officer had deployed the drug sniffing dog. The dog did not alert to the presence of drugs at that time. After the metal box was discovered in the bumper, Trooper Martin drilled three holes into it. He then requested that the dog be redeployed. The dog thereupon alerted to the presence of drugs in the metal box. Trooper Martin also testified that a large block of cheese was found in the trunk near the area of bumper. Trooper Martin testified that he believed the purpose of the cheese was to mask the presence of drugs.

Trooper Martin testified that Defendant was placed under arrest by Trooper Owens after the dog alerted to the presence of drugs in the metal box discovered in the rear bumper. Defendant was then

taken to the Nevada Highway Patrol station. The vehicle was also removed to the Highway Patrol station where a further search was conducted. During that search five kilograms of cocaine was discovered in the metal box located in the vehicle.

## DISCUSSION

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." U.S. Const. Amend. IV. The Fourth Amendment protects reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347 (1967). The Fourth Amendment protects "people not places." *Id.* Evidence obtained in violation of the Fourth Amendment, and evidence derived from it, may be suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963). Defendant Mendez argues that his Fourth Amendment rights were violated because the Highway Patrol officers did not have probable cause or reasonable suspicion to stop his vehicle. He also argues that he did not voluntarily and knowingly consent to a search of the vehicle.

### 1.   **Validity of the Initial Traffic Stop.**

An automobile stop by a police officer is a seizure within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). An officer, who has reasonable suspicion or probable cause to believe that a violation of traffic laws has occurred, may stop and detain the vehicle and its occupants to investigate the infraction. *Whren v. United States*, 517 U.S. 806 (1996); *United States v. Lopez-Soto*, 205 F. 3d 1101, 1104-05 (9th Cir. 2000). So long as the police officer has reasonable suspicion or probable cause to initiate an automobile stop, it is generally irrelevant under the Fourth Amendment that the officer may have had other reasons for making the stop, such as a suspicion or hunch that the driver may be in possession of illegal drugs. *Whren v. United States, supra.*

Trooper Martin testified that he and Trooper Owens stopped Defendant's vehicle for violating NRS 484.307 which states:

> 1. The driver of a vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

Defendant argues that the trooper's decision to stop Defendant for violating NRS 484.307 cannot be upheld under the Fourth Amendment because the statute is unconstitutionally vague. Defendant cites

no legal authority in support of this argument. In determining whether a penal statute such as NRS 484.307 is unconstitutionally vague, the Ninth Circuit stated in *United States v. Tabacca*, 924 F.2d 906, 912 (9th Cir. 1991) as follows:

> When determining an issue of vagueness, this court must consider the common understanding of the terms of the statute in question. *United States v. Fitzgerald,* 882 F.2d 397, 398 (9th Cir.1989). "Further, because this action does not involve first amendment rights, this court need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute, the conduct in question is prohibited." *Id.; United States v. Doremus,* 888 F.2d 630, 634 (9th Cir.1989); *United States v. Hogue,* 752 F.2d 1503 (9th Cir.1985). It is not necessary to address whether the statute is vague as to its other potential applications. *Hogue,* 752 F.2d at 1504.
>
> A statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence of what conduct is prohibited, or if it invites arbitrary and discriminatory enforcement. *Doremus,* 888 F.2d at 634.

In this case, Trooper Martin testified that Defendant Mendez violated the statute because he traveled one and one-half car lengths behind a tractor-trailer at a speed of 70 mph for a period of 10 seconds. Regardless of whether the language of this statute might be vague as applied in other circumstances, people of ordinary intelligence would understand that following another vehicle within the distance and at the speed Defendant's vehicle was traveling is not reasonable and prudent and therefore clearly constitutes conduct prohibited by the statute. Accordingly, Troopers Martin and Owens had probable cause to stop Defendant's vehicle for violating NRS 484.307.

**2.    Duration of Stop and Whether Defendant's Consent to Search Was Voluntary.**

Upon making a valid traffic stop, a police officer may check the validity of the driver's license and the vehicle registration. *See United States v. Chavez-Valenzuela*, 268 F.3d 719, 724 (9th Cir. 2001), *citing United States v. Wood*, 106 F.3d 942, 945 (10th Cir. 1997) ("a police officer is permitted to ask such questions, examine such documentation and run such computer verifications as necessary to determine that the driver has a valid license and is entitled to operate the vehicle."). *See also United States v. $404,905 In U.S. Currency*, 182 F.3d 643, 647 (8th Cir. 1999), *citing United States v. Carrazco*, 91 F.3d 65, 66 (8th Cir. 1996). The officer may detain the driver and his vehicle as long as reasonably necessary to make these determinations and issue a citation or warning. *United States v. Wood*, *supra,* 106 F.3d at 945. Once the driver has produced a valid driver's license and proof that he is

1  entitled to operate the car, and the officer has issued the appropriate citation or warning, however, the
2  driver must be allowed to proceed on his way, without being subject to further delay by the police for
3  additional questioning. *United States v. Rojas-Millan*, 234 F.3d 464, 469-470 (9th Cir. 2000).  A police
4  officer does not have to have reasonable suspicion to question a person about matters unrelated to the
5  purpose of the traffic stop, however, so long as the questioning does not prolong the stop. *United States
6  v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007), citing *Muehler v. Mena*, 544 U.S. 93, 100-01, 125 S.Ct.
7  1465 (2005).  If the officer observes suspicious facts and circumstances during the course of a routine
8  traffic stop, he may also expand the scope of inquiry and prolong the stop to investigate the reasonable
9  suspicions that arise. *United States v. Murillo,* 255 F.3d 1169, 1174 (9th Cir. 2001) and *United States v.
10 Rojas-Millan*, 234 F.3d 464 (9th Cir. 2000).

11         Trooper Martin testified that while waiting for the return from dispatch on the check on
12 Defendant's driver's license, he questioned Defendant Mendez about his travel plans.  Defendant's
13 responses about his travel plans arguably gave rise to a reasonable suspicion that he was transporting
14 narcotics or other contraband.  In any event, it does not appear that Trooper Martin's questioning during
15 this relatively brief period prolonged the stop.  After being advised that the records return on
16 Defendant's license was negative for wants or warrants, Trooper Martin engaged in a brief conversation
17 with Trooper Owens about Defendant's responses to his questions and filled out the consent to search
18 form.  Again, it does not appear from the Trooper's testimony that these activities significantly
19 prolonged the stop.  Trooper Martin then returned Defendant's license to him, advised him that he was
20 not issuing him a citation and that he was free to leave.  Trooper Martin's statements to Defendant
21 Mendez were apparently made for the purpose of establishing the voluntary nature of the encounter and
22 questioning which followed.

23         The Fourth Amendment does not prohibit an officer from approaching an individual and
24 attempting to ask him a few questions. *White v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d
25 497 (1980); *Florida v. Bostick,* 501 U.S. 429, 435, 111 S.Ct. 2382 (1991).  So long as a reasonable
26 person would feel free to disregard the police and go about his business, the encounter is consensual and
27 no reasonable suspicion is required. *Bostick, supra.*  The Court in *Bostick* stated: "Only when the
28 officer, by means of physical force or show of authority, has in some way restrained the liberty of a

1  citizen may we conclude that a 'seizure' has occurred." *Id.*  Questioning by law enforcement officers
2  constitutes a detention or seizure only if in view of all the circumstances surrounding the incident, a
3  reasonable person would have believed that he was not free to leave. *Desyllas v. Bernstine*, 351 F.3d
4  934, 940 (9th Cir. 2003), *quoting United Sates v. Kim,* 25 F3d 1426, 1430 (9th Cir. 1994).  In this case,
5  the detention resulting from the traffic stop was concluded when Trooper Martin returned Defendant's
6  driver's licence to him, advised him that no citation would be issued and that he was free to leave.
7  Trooper Martin waited until Defendant had turned and taken several steps toward his vehicle before
8  asking him if he would be willing to answer additional questions.  The Court concludes that by that
9  point, the Defendant was no longer detained and a reasonable person in his position would have believed
10 that he was free to leave and under no legal obligation to respond to the officer's questions.

11      In *United States v. Murillo,* 255 F.3d 1169, 1175 (9th Cir. 2001), the court, citing *United States*
12 *v. Castillo*, 866 F.2d 1071, 1082 (9th Cir. 1988), lists the following factors that the court should
13 consider in determining whether a defendant gave voluntary consent to a search:  (1) whether the
14 defendant was in custody; (2) whether the arresting officer had drawn his gun; (3) whether *Miranda*
15 warnings had been given; (4) whether the defendant was told he had the right not to consent; and (5)
16 whether the defendant was told a search warrant could be obtained.  It is not necessary that all of these
17 factors favor a finding of consent.  The Court must evaluate them in determining whether, under the
18 totality of the circumstances, the Defendant's consent was voluntary.  *See also United States v. Soriano*,
19 346 F.3d 963, 968-69 (9th Cir. 2003).

20      Defendant initially gave verbal consent to search his vehicle.  Trooper Martin then presented the
21 written consent to search form to the Defendant which is printed in both Spanish and English.
22 According to the Trooper, the Defendant appeared to read the form and then signed under the Spanish
23 language portion of the form.[1]  The form, itself, advises that the person may refuse to consent to the
24 search.  *See Government's Exhibit "2".*  Trooper Martin testified that after signing the form, Defendant
25 informed him that he understood the form.  Trooper Martin testified that he did not have his gun drawn

---

[1] Trooper Martin testified that during the traffic stop, Defendant Mendez conversed with him in English.

and no threats were made to the Defendant to obtain his consent. Although three other officers were present in the vicinity, it appears from Trooper Martin's testimony that they were still inside their vehicles when Defendant Mendez gave his consent to search the vehicle. Trooper Martin did not inform Defendant of his *Miranda* rights which, had they been read, would be an indication that Defendant was in custody. Based on these circumstances, Defendant's consent to the search was voluntary.

## CONCLUSION

The Court finds that the Troopers Martin and Owens had probable cause to stop Defendant Mendez's vehicle for following another vehicle too closely in violation of NRS 484.307. Trooper Martin's questioning of Defendant during the traffic stop detention did not violate Defendant's rights under the Fourth Amendment because it did not prolong the detention. The Court also finds that after the traffic stop detention ended and Defendant was free to leave, he voluntarily answered additional questions posed by the trooper and voluntarily consented to a search of his vehicle. Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence (#17) be **denied.**

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 15th day of January, 2009.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge